ORIGINAL

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 10 2026 ★
BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

John Lonie
Plaintiff,

V.

General Motors Financial Company, Inc.
Defendant,

RECEIVED
SEP 11 2026
PRO SE OFFICE

**COMPLAINT**

**JURY TRIAL DEMANDED**

**Case No**

## INTRODUCTION

1. Congress has recognized that the integrity and stability of the national banking system depend upon the accuracy, fairness, and privacy of consumer credit reporting. Inaccurate credit reports undermine public confidence, impair the efficiency of the financial system, and expose consumers to unjust financial harm. Unfair and misleading credit reporting practices erode trust in financial institutions and threaten the proper functioning of interstate commerce. To address these concerns, Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., to promote accurate and fair credit reporting, ensure reasonable investigations of disputed information, protect consumer privacy, and enhance the efficiency and reliability of the banking and credit reporting systems.

2. The FCRA establishes a comprehensive framework of safeguards designed to protect consumers from the substantial harm caused by inaccurate, incomplete, or misleading credit reporting. By imposing duties on consumer reporting agencies and furnishers of information, the FCRA reduces the risk that false or erroneous credit data will be disseminated and relied upon in the marketplace. Through these statutory protections, Congress sought to balance the financial industry's need for reliable and efficient credit

REC'D IN PRO SE OFFICE
SEP 11 '26 AM10:05

information with consumers' fundamental rights to accuracy, fairness, and privacy in credit reporting.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 because this action arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Venue is proper in this District because Defendant transacts business within this District and Plaintiff, John Lonie, resides in Brooklyn, New York, within the Eastern District of New York.

## PARTIES

4. Plaintiff, John Lonie, is a natural person residing in the Eastern District of New York. Plaintiff is a "consumer" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

5. Defendant, General Motors Financial Company, Inc., is a "furnisher" of information to consumer reporting agencies for purposes of the Fair Credit Reporting Act.

6. Upon information and belief, Defendant's principal place of business is located at 801 Cherry Street, Suite 3600, Fort Worth, Texas 76102-6855.

## MATERIAL FACTS

7. On or around August 26, 2020, Plaintiff incurred a financial obligation arising from an alleged automobile lease with Defendant in the amount of $17,862. The transaction was incurred primarily for personal, family, or household purposes.

8. On or around June 2026, Plaintiff filed disputes with Equifax, Experian, and TransUnion concerning inaccurate and incomplete information furnished by Defendant regarding the account.

9. After receiving notice of Plaintiff's disputes through the consumer reporting agencies, Defendant continued furnishing materially inconsistent, incomplete, and misleading account information concerning the same GM Financial account.

10. The account was opened on or around August 26, 2020, in the original amount of $17,862, with a contractual term of 39 months. Plaintiff's contractual monthly payment was $458.

11. Plaintiff made his final payment of $333 on December 22, 2024. Immediately before that payment, the remaining balance on the account was $333. Plaintiff paid the remaining $333 balance, reducing the account balance to $0.

12. Despite those facts, Defendant furnished materially different descriptions of the disposition of the same account to the consumer reporting agencies.

13. Defendant furnished to Experian (***See Exhibit A***) that the account was "Paid in settlement" and that "$333 [was] written off." Defendant further furnished information resulting in the comment that the account was "paid in full for less than full balance."

14. Defendant furnished to TransUnion that the same account was "Account paid in Full was a Charge-off." (***See Exhibit B)***

15. Defendant furnished to Equifax that the same account was a "Charge Off," while also furnishing the activity designation "Paid and Closed" and narrative codes identifying the account as both a "Charged Off Account" and an "Account Paid for Less Than Full Balance."

16. These descriptions are materially inconsistent. Reporting that an account was paid in full communicates that the remaining obligation was fully satisfied, while reporting that the account was paid or settled for less than the full balance communicates that some portion of the remaining obligation was not paid.

17. The inconsistency is material because Plaintiff's remaining balance was $333 and Plaintiff paid $333 on December 22, 2024, bringing the balance to $0. Defendant's reporting therefore creates conflicting impressions regarding whether Plaintiff satisfied the entire remaining balance.

18. Defendant also furnished materially incomplete information to Experian concerning Plaintiff's final payment and contractual payment obligation. Defendant furnished no recent-payment amount, no monthly-payment amount, no current balance

amount, and no highest-balance amount for this account, even though Defendant furnished the original balance of $17,862 and the 39-month contractual term.

19. Defendant's omission of the recent payment amount is particularly material because Plaintiff made a final payment of $333 on December 22, 2024, yet Defendant simultaneously furnished the derogatory description that the account was "Paid in settlement" with "$333 written off."

20. By omitting the final payment amount and the balance immediately preceding that payment, Defendant furnished a materially incomplete picture of the account's disposition. A reader is informed that $333 was supposedly written off or that the account was paid for less than the full balance but is not shown that the remaining balance was $333 and that Plaintiff paid $333.

21. Defendant likewise omitted the contractual monthly payment amount from the information furnished to Experian. Experian reflects a 39-month term but no monthly payment amount, despite Plaintiff's contractual monthly payment being $458.

22. Defendant furnished different and inaccurate payment-term information to TransUnion. Defendant furnished the account as requiring "$0 per month" for 39 months, despite the contractual monthly payment being $458.

23. Reporting a $0 monthly payment materially misrepresents the contractual terms of the account and prevents the reported delinquency history from being evaluated against the payment obligation Plaintiff was actually required to satisfy.

24. Defendant also furnished inconsistent information concerning Plaintiff's final payment. Before Equifax's post-dispute update, Defendant furnished an actual payment amount of $333 and a last-payment date of December 22, 2024. After the dispute investigation, Defendant continued furnishing December 22, 2024, as the date of last payment but changed the actual payment amount to $0.

25. Defendant similarly furnished to TransUnion a "Payment Received" amount of $0 while simultaneously furnishing December 22, 2024, as the date Plaintiff made his last

payment. Those entries are materially misleading because Plaintiff did not make a $0 payment on December 22, 2024. Plaintiff paid $333.

26. Defendant further furnished inconsistent closing information. Defendant initially furnished to Equifax a closing date of December 23, 2024, but after the dispute investigation inaccurately changed the closing date to December 22, 2024. Further, Defendant furnished December 22, 2024, as the closing date to TransUnion. However, the account closed December 23, 2024

27. Defendant also furnished materially inconsistent information concerning how long the derogatory account would remain associated with Plaintiff's credit file. Defendant furnished information to Experian resulting in an "On Record Until" date of August 2030, while Defendant furnished information to TransUnion resulting in an estimated removal date of December 2028.

28. Those materially different removal dates further demonstrate that Defendant furnished inconsistent account chronology concerning the same account. Defendant also furnished to Equifax a date of first delinquency of January 19, 2024.

29. As set forth more fully below in the payment-history allegations, that date conflicts with the delinquency chronology Defendant furnished concerning the same account, including reporting showing a delinquency beginning in December 2023.

30. These are not isolated technical differences. Defendant furnished conflicting information concerning the amount Plaintiff was obligated to pay each month, the amount of Plaintiff's final payment, whether the remaining debt was paid in full or settled for less than the amount owed, the date the account closed, the date the continuous delinquency began, and the projected duration of the derogatory reporting.

31. These fields concern the fundamental financial condition and disposition of Plaintiff's account and materially affect how a creditor or other user of a consumer report could understand Plaintiff's payment performance and satisfaction of the obligation.

32. Upon information and belief, Defendant possessed or had access to its own servicing records concerning Plaintiff's contractual payment amount, remaining balance,

final payment, payment date, closing date, delinquency history, and account disposition when it investigated Plaintiff's disputes and furnished the information described above.

33. After receiving notice of Plaintiff's disputes, Defendant continued furnishing materially misleading and inconsistent payment-history information concerning the same account to Experian, TransUnion, and Equifax.

34. Defendant furnished to Experian, identified as ***Exhibit A***, that Plaintiff was 30 days past due in December 2023, 60 days past due in January 2024, 90 days past due in February 2024, 120 days past due in March 2024, and charged off beginning in April 2024.

35. Defendant furnished a materially different payment history to TransUnion, identified as ***Exhibit B***. Defendant furnished December 2023 as current, January 2024 as 30 days past due, February 2024 as 60 days past due, March 2024 as 90 days past due, and April 2024 as charged off.

36. Defendant furnished yet another materially different payment history to Equifax, identified as Exhibit C. Following the dispute investigation, Defendant furnished January 2024 as 60 days past due, February 2024 as 90 days past due, and March 2024 as charged off.

37. Defendant therefore furnished three materially different versions of Plaintiff's delinquency history for the same account and the same reporting period.

38. The misleading nature of Defendant's reporting is especially clear in March 2024. For that same month, Defendant furnished:

- to Experian, that the account was 120 days past due;
- to TransUnion, that the account was 90 days past due; and
- to Equifax, that the account was already charged off.

39. A 90-day delinquency, a 120-day delinquency, and a charge-off are materially different account conditions. Defendant's furnishing of three different statuses for March 2024 creates materially misleading representations concerning the severity, progression, and timing of Plaintiff's delinquency.

40. Defendant likewise furnished materially misleading information concerning when the continuous delinquency began. Defendant furnished to Experian that Plaintiff became 30 days delinquent in December 2023, while Defendant furnished to TransUnion that Plaintiff was current during December 2023.

41. Plaintiff's continuous delinquency began in December 2023 and was never cured before the account ultimately reached charge-off. The December 2023 delinquency is further supported by the chronological progression Defendant furnished to Experian: 30 days late in December 2023, 60 days late in January 2024, 90 days late in February 2024, 120 days late in March 2024, and charge-off beginning in April 2024.

42. Defendant nevertheless furnished to Equifax a date of first delinquency of January 19, 2024, despite the true date being December 2023, while also simultaneously furnishing January 2024 as already 60 days delinquent.

43. That reporting is internally misleading. If January 19, 2024, were truly the first delinquency, the account could not simultaneously have already reached a 60-day delinquency rating during January 2024.

44. The payment history Defendant furnished therefore supports Plaintiff's allegation that the reported January 19, 2024, date of first delinquency is inaccurate and that the continuous delinquency began earlier, in December 2023.

45. Defendant's furnishing of different delinquency histories is material because the payment history is directly relevant to determining the date of first delinquency, the progression of delinquency, when the account reached charge-off status, and the age of the derogatory information. Defendant also furnished a materially questionable and unexplained delinquency progression during 2022.

46. Defendant furnished to Experian that Plaintiff was 30 days past due in August 2022, 60 days past due in September 2022, 30 days past due in October 2022, and 60 days past due again in November 2022.

47. Defendant furnished substantially the same sequence to TransUnion: 30 days past due in August 2022, 60 days past due in September 2022, 30 days past due in October 2022, 60 days past due in November 2022, and current in December 2022.

48. A reduction from 60 days delinquent to 30 days delinquent would ordinarily reflect intervening payment activity, an account adjustment, or another event affecting the delinquency status.

49. Defendant, however, did not furnish the corresponding monthly balance, past-due amount, scheduled-payment amount, or amount actually paid for those months to TransUnion, leaving the 60-day-to-30-day regression unsupported and materially misleading when viewed together with the derogatory ratings Defendant furnished.

50. Without the underlying payment activity, Defendant furnished the derogatory conclusion that Plaintiff moved from 30 days late to 60 days late, back to 30 days late, and then again to 60 days late without furnishing the account activity necessary to explain or verify that progression.

51. This omission is material because the underlying payment information would reveal whether Plaintiff actually made a payment sufficient to reduce the delinquency, whether the delinquency ratings were accurately calculated, and whether the account was subsequently returned to current status.

52. Defendant's misleading payment-history reporting also affects the accuracy of the charge-off chronology. Defendant furnished to Equifax that the account reached charge-off status in March 2024, while furnishing to Experian and TransUnion that the account did not reach charge-off status until April 2024.

53. Defendant's furnishing of different charge-off dates for the same account materially misrepresents the account's delinquency progression and prevents the reporting from presenting one clear and accurate chronology.

54. These differences are not minor technical variations. Defendant furnished materially different information concerning whether Plaintiff was current or delinquent, the

number of days Plaintiff was allegedly delinquent, the date the continuous delinquency began, and the month in which the account reached charge-off status.

55. Upon information and belief, Defendant maintained or had access to servicing records reflecting Plaintiff's payment dates, payment amounts, monthly balances, amounts past due, delinquency status, and charge-off date. Those records could have been reviewed during a reasonable investigation to determine which payment history was accurate and to correct the materially misleading histories furnished to Experian, TransUnion, and Equifax.

56. Defendant furnished materially incomplete and misleading balance and payment information concerning the same account to Experian, TransUnion, and Equifax after receiving notice of Plaintiff's disputes.

57. Defendant failed to furnish a complete monthly history of balances, amounts past due, amounts paid, and scheduled payment amounts for substantial portions of the life of the account.

58. Those omissions are material because the missing information directly bears on the inaccuracies already identified above, including the date the continuous delinquency began, the progression of the delinquency ratings, whether the account was brought current, the amount remaining before payoff, and whether Plaintiff satisfied the remaining balance in full.

59. As reflected in Exhibit A, Defendant furnished to Experian no recent-payment amount, no monthly-payment amount, no current balance amount, and no highest-balance amount for the subject account, while simultaneously furnishing that the account was "Paid in settlement," that "$333 [was] written off," and that the account was "paid in full for less than full balance."

60. The omitted payment and balance information is material because Plaintiff's remaining balance was $333 and Plaintiff paid $333 on December 22, 2024, reducing the account balance to $0. Without that information, Defendant's "less than full balance" reporting creates a materially misleading impression concerning whether Plaintiff satisfied the remaining obligation.

61. As reflected in **Exhibit B,** Defendant left the monthly balance, past-due amount, amount-paid, and scheduled-payment fields blank for substantial portions of the account history while nevertheless furnishing derogatory monthly payment ratings.

62. Those omissions are particularly material during the periods in which Defendant furnished changing delinquency ratings because the missing account activity would show whether the reported movement between delinquency levels was supported by actual payments and balances.

63. Defendant's furnishing to TransUnion becomes internally contradictory in April 2024. For that month, Defendant furnished a $0 balance, $0 past-due amount, $0 amount paid, and $0 scheduled payment, while simultaneously furnishing the account as charged off.

64. Defendant then continued furnishing the account as charged off through December 2024.

65. That reporting is materially misleading when compared with Defendant's separate furnishing that Plaintiff's last payment was made on December 22, 2024.

66. If the account balance was truly $0 in April 2024, Defendant's later furnishing of a December 2024 last-payment date is inconsistent with that chronology. Conversely, if an amount remained owing after April 2024, then the April 2024 $0 balance was inaccurate.

67. In December 2024, Defendant again furnished to TransUnion a balance of $0, past-due amount of $0, amount paid of $0, and scheduled payment of $0, even though Plaintiff actually made a $333 final payment on December 22, 2024.

68. Defendant likewise furnished incomplete underlying balance and payment data to Equifax while continuing to furnish delinquency ratings, a first-delinquency date, and charge-off information.

69. The missing balance and payment data is directly relevant to determining whether Defendant's reported January 19, 2024, first-delinquency date, delinquency progression, and charge-off chronology were accurate.

70. These omissions and contradictions do not constitute isolated missing fields. They materially affect the accuracy and meaning of the account status, payment history,

delinquency chronology, and payoff information Defendant furnished concerning Plaintiff's account.

71. Upon information and belief, Defendant maintained or had access to servicing records reflecting Plaintiff's monthly balances, amounts past due, scheduled payments, payments received, delinquency status, and final payoff activity.

72. A reasonable investigation of those records could have resolved the materially misleading and contradictory balance and payment information Defendant continued furnishing after notice of Plaintiff's disputes.

73. As reflected in **Exhibit C**, Defendant likewise failed to furnish to Equifax a complete monthly history of Plaintiff's balances, amounts past due, amounts paid, and scheduled payment amounts. Instead, Defendant furnished derogatory monthly ratings without the corresponding account activity necessary to verify those ratings.

74. The incompleteness became more pronounced following Plaintiff's dispute. Before the reinvestigation, Defendant furnished an actual payment amount of $333, a high credit of $17,862, a $0 balance, and a last-payment date of December 22, 2024.

75. After the reinvestigation, Defendant continued furnishing December 22, 2024, as Plaintiff's last-payment date but changed the actual payment amount from $333 to $0, changed the high credit from $17,862 to $333, and furnished a $333 charge-off amount.

76. Those changes are materially misleading when considered together. Defendant simultaneously furnished that Plaintiff made his last payment on December 22, 2024, that the amount of that payment was $0, and that $333 was charged off, even though Plaintiff actually paid $333 on December 22, 2024, and thereby reduced the remaining $333 balance to $0.

77. Defendant's failure to furnish the preceding monthly balances, amounts past due, scheduled payments, and amounts paid further obscures whether the $333 represented an unpaid amount allegedly charged off or the remaining balance Plaintiff actually paid.

78. The missing Equifax balance history also bears directly on Defendant's furnishing of January 19, 2024, as the date of first delinquency while simultaneously furnishing January

2024 as already 60 days past due. The underlying monthly balance and payment activity would permit that chronology to be objectively verified.

79. In or around June 26, 2026, Plaintiff received the dispute results of the investigation concerning the GM Financial account from Equifax, Experian, and TransUnion.

80. Plaintiff's disputes challenged inaccurate and incomplete information concerning the account, including its status, payment history, delinquency information, balance history, payment information, and related account data.

81. Upon information and belief, the consumer reporting agencies transmitted Plaintiff's disputes and relevant dispute information to Defendant pursuant to the FCRA.

82. Defendant's receipt of the disputes is further supported by the post-dispute reporting itself. Defendant marked the account disputed with Equifax through the notation "Consumer Disputes This Account," and Experian likewise reflects "ITEM IN DISPUTE BY CONSUMER."

83. Once Defendant received notice of Plaintiff's disputes from the consumer reporting agencies, Defendant's duties under 15 U.S.C. § 1681s-2(b) were triggered, including the duty to conduct a reasonable investigation, review the relevant information provided with the disputes, report the results of its investigation, and correct, modify, delete, or otherwise address information found to be inaccurate, incomplete, or unverifiable.

84. Despite those duties, Defendant continued furnishing and verifying materially inaccurate, incomplete, and misleading information concerning the same account after the dispute process.

85. The post-dispute reporting continued to contain the inaccurate and misleading information identified above, including conflicting account statuses, contradictory payment information, inconsistent delinquency ratings, inconsistent charge-off chronology, incomplete balance and payment history, and materially different account-aging information.

86. Had Defendant conducted a reasonable investigation, it could have reviewed its own servicing records and identified the correct contractual payment amount, payment

history, monthly balances, amounts past due, final payment, delinquency chronology, charge-off date, and account disposition.

87. Upon information and belief, Defendant possessed or had access to records sufficient to verify and correct the disputed information, including account statements, payment records, servicing history, delinquency records, balance information, and payoff activity.

88. Rather than correcting the inaccurate and incomplete reporting, Defendant verified or continued furnishing information that remained materially misleading after the disputes.

89. Defendant's failure to reconcile the conflicting information across Equifax, Experian, and TransUnion supports Plaintiff's allegation that Defendant's investigation was unreasonable because a reasonable review of Defendant's own records could have determined which information was accurate and corrected the contradictory reporting.

90. As a result of Defendant's failure to conduct a reasonable investigation and correct the disputed information, materially inaccurate and incomplete information remained on Plaintiff's consumer reports after the dispute process. Defendant's continued furnishing of inaccurate, incomplete, and materially misleading information after receiving notice of Plaintiff's disputes was not only negligent but also willful.

91. Defendant had notice that Plaintiff challenged the accuracy and completeness of the account information and, upon information and belief, possessed or had access to servicing records capable of determining the correct payment amount, account balance, delinquency history, charge-off chronology, and final account disposition. Despite that notice and access to relevant account records, Defendant continued furnishing and verifying materially inaccurate and contradictory information concerning the account.

92. Defendant's continued verification of disputed information that could have been corrected through a reasonable review of its own records demonstrates a knowing and intentional disregard of its duties under the Fair Credit Reporting Act.

93. As a result of Defendant's willful noncompliance, Plaintiff seeks all relief available under 15 U.S.C. § 1681n, including statutory damages, punitive damages, costs, and any other relief permitted by law.

94. As a direct and proximate result of Defendant's continued furnishing and verification of inaccurate, incomplete, and materially misleading information, Plaintiff suffered actual damages.

95. Defendant's inaccurate and derogatory reporting caused Plaintiff's credit score to decrease and impaired Plaintiff's ability to apply for, obtain, and take advantage of new credit opportunities.

96. Plaintiff was deterred from pursuing new credit opportunities because the inaccurate information remained on his consumer reports and negatively affected his creditworthiness. Plaintiff experienced embarrassment, humiliation, frustration, and mental anguish as a result of Defendant's reporting and the resulting damage to his credit standing.

97. Plaintiff felt particularly humiliated in front of his wife and family because the inaccurate derogatory reporting hindered his ability to move forward financially and use his credit for personal and family purposes.

98. Plaintiff also suffered significant frustration and emotional distress from repeatedly attempting to correct information that Defendant continued to furnish despite receiving notice of Plaintiff's disputes.

99. Plaintiff incurred out-of-pocket expenses by paying for private credit assistance and credit counseling to challenge and dispute the inaccurate information appearing on his consumer reports. Plaintiff further suffered the loss of personal time and effort spent reviewing his consumer reports, identifying the inaccurate information, preparing and submitting disputes, obtaining and reviewing the results, and attempting to have Defendant's reporting corrected.

100. Plaintiff would not have incurred these expenses, lost this time, or experienced the resulting embarrassment, humiliation, frustration, and mental anguish but for Defendant's failure to reasonably investigate and correct the inaccurate and materially misleading information after receiving notice of Plaintiff's disputes.

101. Defendant's conduct caused Plaintiff actual financial and non-economic harm, including diminished creditworthiness, lost credit opportunities, out-of-pocket expenses, loss of time, inconvenience, embarrassment, humiliation, frustration, and mental anguish.

102. Plaintiff seeks recovery of all actual damages caused by Defendant's negligent and willful noncompliance pursuant to 15 U.S.C. §§ 1681n and 1681o, together with statutory and punitive damages where authorized by law, costs, and all other appropriate relief.

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681s-2(b)

103. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104. Defendant is a furnisher of information subject to the duties imposed by the Fair Credit Reporting Act, including 15 U.S.C. § 1681s-2(b).

105. Plaintiff disputed inaccurate and incomplete information concerning Defendant's account with Equifax, Experian, and TransUnion.

106. Upon information and belief, the consumer reporting agencies transmitted Plaintiff's disputes and relevant information concerning those disputes to Defendant.

107. Upon receiving notice of Plaintiff's disputes from the consumer reporting agencies, Defendant was required under 15 U.S.C. § 1681s-2(b) to conduct a reasonable investigation, review all relevant information provided by the consumer reporting agencies, report the results of its investigation, and appropriately modify, delete, or otherwise correct information found to be inaccurate, incomplete, or unverifiable.

108. Defendant failed to conduct a reasonable investigation of Plaintiff's disputes and continued furnishing and verifying materially inaccurate, incomplete, contradictory, and misleading information concerning Plaintiff's account.

109. Defendant failed to reasonably investigate and correct, among other things, materially misleading information concerning Plaintiff's contractual monthly payment, final payment amount, account disposition, date of first delinquency, delinquency ratings, charge-off

chronology, monthly balances, amounts past due, amounts paid, and scheduled payment information.

110. Defendant furnished materially different payment histories concerning the same account to the consumer reporting agencies, including three different statuses for March 2024: charge-off to Equifax, 120 days past due to Experian, and 90 days past due to TransUnion.

111. Defendant further furnished January 19, 2024, as the date of first delinquency to Equifax despite payment-history information reflecting that the continuous delinquency began in December 2023 and was never cured before charge-off.

112. Defendant also continued furnishing materially misleading information concerning Plaintiff's final payment. Defendant had previously furnished an actual payment amount of $333 and a last-payment date of December 22, 2024, but following the dispute continued furnishing December 22, 2024, as the last-payment date while changing the payment amount to $0.

113. Upon information and belief, Defendant possessed or had access to account and servicing records reflecting the correct payment amounts, contractual terms, monthly balances, delinquency history, charge-off information, and final payoff activity.

114. Had Defendant conducted a reasonable investigation of those records, Defendant could have identified and corrected the inaccurate, incomplete, and materially misleading information described in this Complaint.

115. Defendant's failure to conduct a reasonable investigation and correct the disputed information constituted negligent noncompliance with 15 U.S.C. § 1681s-2(b).

116. Defendant's continued furnishing and verification of information contradicted by its own prior reporting and account records, despite receiving notice of Plaintiff's disputes, constituted knowing and intentional noncompliance with, or reckless disregard of, Defendant's duties under the FCRA and therefore constituted willful noncompliance

117. As a direct and proximate result of Defendant's negligent and willful noncompliance, Plaintiff suffered actual damages, including diminished creditworthiness,

impaired credit opportunities, out-of-pocket expenses, loss of time, inconvenience, embarrassment, humiliation, frustration, and mental anguish.

118. Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks actual damages, statutory damages where permitted, punitive damages, costs, and all other relief available by law.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor and against Defendant General Motors Financial Company, Inc., and that Plaintiff be awarded the following relief:

- Actual damages pursuant to 15 U.S.C. § 1681n(a)(1);
- Statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);
- Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);
- Actual damages pursuant to 15 U.S.C. § 1681o;
- Costs of this action as permitted by law;
- Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: 9/1/2026

John Lonie
1731 Coleman Street
Brooklyn, New York 11234
Johnmlonie123@yahoo.com
(917) 439 - 6391

**EXHIBIT A**

Prepared For

**JOHN LONIE**

**Personal & Confidential**

**Date Generated** Jul 19, 2026

**Report Number** 0819-7863-14

[redacted] [redacted] [redacted]

## Personal Information

[redacted] [redacted]

Because your personal information is reported by you, your creditors, and other sources, it's typical to see small variations in reported personal information, like names and addresses. For security reasons, many of these items can't be disputed online, but don't worry—they don't affect your credit score.

### Names

[redacted]

[redacted]

[redacted]

## AMERICREDIT/GM FINANCIAL

POTENTIALLY NEGATIVE

### Account Info

| | | | |
|---|---|---|---|
| Account Name | **AMERICREDIT/GM FINANCIAL** | Balance | - |
| Account Number | **112038XXXXXX** | Balance Updated | - |
| Account Type | **Auto Lease** | Recent Payment | - |
| Responsibility | **Individual** | Monthly Payment | - |
| Interest Type | **Fixed** | Original Balance | **$17,862** |
| Date Opened | **08/26/2020** | Highest Balance | - |
| Status | **Paid in settlement. $333 written off.** | Terms | **39 Months** |
| | | On Record Until | **Aug 2030** |
| Status Updated | **Nov 2024** | | |

### Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024 | **60** | **90** | **120** | **CO** | **CO** | **CO** | **CO** | **CO** | **CO** | **CO** | **CO** | – |
| 2023 | ✓ | ✓ | **30** | ✓ | **30** | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | **30** |
| 2022 | **30** | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | **30** | **60** | **30** | **60** | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | – | – | – | – | – | – | – | – | ✓ | ✓ | ✓ | ✓ |

| | | | |
|---|---|---|---|
| ✓ | Current / Terms met | 30 | Past due 30 days |
| 60 | Past due 60 days | 90 | Past due 90 days |
| 120 | Past due 120 days | CO | Charge off |

**Payment history guide**

Charge Off as of Nov 2024 to Apr 2024

120 days past due as of Mar 2024

90 days past due as of Feb 2024

60 days past due as of Jan 2024,Nov 2022,Sep 2022

30 days past due as of Dec 2023,May 2023,Mar 2023,Oct 2022,Aug 2022,Jan 2022

This account is scheduled to continue on record until Aug 2030.

---

## Historical Info

Original Creditor **GM FINANCIAL LEASING**

---

## Contact Info

Address **PO BOX 181145,**
**ARLINGTON TX 76096**

Phone Number **(800) 284-2271**

---

## Comment

**Current:**

Account paid in full for less than full balance

**Previous:**

Full termination/balance owing.

Invalid date, Invalid date, Invalid date, Invalid date, Invalid date

## Your Statement

ITEM IN DISPUTE BY CONSUMER

## Reinvestigation Info

This item was updated from our processing of your dispute in Jul 2026.

[redacted]

EXHIBIT B

[redacted]

Total Months: 33

GM FINANCIAL 11203899****

## Account Information

| | |
|---|---|
| **Address** | PO BOX 181145 ARLINGTON, TX 76096-1145 |
| **Phone** | (800) 284-2271 |
| **Monthly Payment** | $0 |
| **Date Opened** | 08/26/2020 |
| **Responsibility** | Individual Account |
| **Account Type** | Installment Account |
| **Loan Type** | AUTO LEASE |
| **Balance** | $0 |
| **Date Updated** | 12/22/2024 |
| **Payment Received** | $0 |
| **Last Payment Made** | 12/22/2024 |
| **Original Creditor** | GM FINANCIAL LEASING |
| **Pay Status** | >Account paid in Full was a Charge-off< |
| **Terms** | $0 per month, paid Monthly for 39 months |
| **Date Closed** | 12/22/2024 |
| **High Balance (Hist.)** | High balance of $17,862 from 04/2024 to 04/2024; $17,862 from 12/2024 to 12/2024 |
| **Estimated month and year this item will be removed** | 12/2028 |

Payment History

| September 2020 | October 2020 | November 2020 | December 2020 | January 2021 | February 2021 | March 2021 |
|---|---|---|---|---|---|---|
| Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - |
| Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - |
| Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - |
| Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - |
| Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - |
| Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK |

| April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 |
|---|---|---|---|---|---|---|
| Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - |
| Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - |
| Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - |
| Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - |
| Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - |
| Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK |

| November 2021 | December 2021 | January 2022 | February 2022 | March 2022 | April 2022 | May 2022 |
|---|---|---|---|---|---|---|
| Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - |
| Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - |
| Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - |
| Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - |
| Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - |
| Rating<br>OK | Rating<br>OK | Rating<br>30 | Rating<br>OK | Rating<br>OK | Rating<br>OK | Rating<br>OK |

| June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 |
|---|---|---|---|---|---|---|
| Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - | Balance<br>- - - |
| Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - | Past Due<br>- - - |
| Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - | Amount Paid<br>- - - |
| Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - | Scheduled Payment<br>- - - |
| Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - | Remarks<br>- - - |
| Rating<br>OK | Rating<br>OK | Rating<br>30 | Rating<br>60 | Rating<br>30 | Rating<br>60 | Rating<br>OK |

| | January 2023 | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 |
|---|---|---|---|---|---|---|---|
| Balance | --- | --- | --- | --- | --- | --- | --- |
| Past Due | --- | --- | --- | --- | --- | --- | --- |
| Amount Paid | --- | --- | --- | --- | --- | --- | --- |
| Scheduled Payment | --- | --- | --- | --- | --- | --- | --- |
| Remarks | --- | --- | --- | --- | --- | --- | --- |
| Rating | OK | OK | OK | 30 | OK | 30 | OK |

| | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | February 2024 |
|---|---|---|---|---|---|---|---|
| Balance | --- | --- | --- | --- | --- | --- | --- |
| Past Due | --- | --- | --- | --- | --- | --- | --- |
| Amount Paid | --- | --- | --- | --- | --- | --- | --- |
| Scheduled Payment | --- | --- | --- | --- | --- | --- | --- |
| Remarks | --- | --- | --- | --- | --- | PPL< | > |
| Rating | OK | OK | OK | OK | OK | 30 | 60 |

| | March 2024 | April 2024 | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 |
|---|---|---|---|---|---|---|---|
| **Balance** | - - - | $0 | - - - | - - - | - - - | - - - | - - - |
| **Past Due** | - - - | $0 | - - - | - - - | - - - | - - - | - - - |
| **Amount Paid** | - - - | $0 | - - - | - - - | - - - | - - - | - - - |
| **Scheduled Payment** | - - - | $0 | - - - | - - - | - - - | - - - | - - - |
| **Remarks** | - - - | - - - | - - - | - - - | - - - | - - - | - - - |
| Rating | **90** | **C/O** | **C/O** | **C/O** | **C/O** | **C/O** | **C/O** |

| | October 2024 | November 2024 | December 2024 |
|---|---|---|---|
| **Balance** | - - - | - - - | $0 |
| **Past Due** | - - - | - - - | $0 |
| **Amount Paid** | - - - | - - - | $0 |
| **Scheduled Payment** | - - - | - - - | $0 |
| **Remarks** | /CLO | SET< | > |
| Rating | **C/O** | **C/O** | **C/O** |

Total Months: 52

EXHIBIT C

# Disputed Credit Accounts

**GMFNANCIAL** PO Box 181145, Arlington, TX, 76096-1145 | (800) 284-2271

## When we received your dispute, your credit account information was:

Account Number: ***7684** | Owner: **Individual Account**
Loan/Account Type: **Auto Lease** | Status: **Pays As Agreed**

Date Reported: **12/23/2024** | Balance: **$0**
Credit Limit: ■ | High Credit: **$17,862**

Date Opened: **08/26/2020**
Date of Last Activity: **12/22/2024**
Scheduled Payment Amount: ■
Actual Payment Amount: **$333**
Date of Last Payment: **12/22/2024**
Term Duration: **39 Months**

Date of 1st Delinquency: ■
Date Major Delinquency 1st Reported: ■
Amount Past Due: ■
Charge Off Amount: ■
Date Closed: **12/23/2024**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **52**
Deferred Payment Start Date: ■
Balloon Payment Amount: ■
Balloon Payment Date: ■
Narrative Code(s): **132, 158, 205, 214**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024 | 30 | 60 | 90 | CO | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| 2023 | ✓ | ✓ | ✓ | 30 | ✓ | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2022 | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | 30 | 60 | 30 | 60 | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | ✓ | ✓ | ✓ | ✓ |

| Narrative Code | Narrative Code Description |
|---|---|
| 132 | Fixed Rate |
| 158 | Closed or Paid Account/Zero Balance |
| 205 | Lease - Full Termination |
| 214 | Auto |

**You indicated that the status, payment history, or payment rating on this account was inaccurate. Our investigation concluded that the disputed information should be updated.**

## The credit account information after completing the dispute investigation is:

Account Number: ***7684** | Owner: **Individual Account**
Loan/Account Type: **Auto Lease** | Status: **Charge Off**

Date Reported: **06/26/2026** | Balance: **$0**
Credit Limit: ■ | High Credit: **$333**

Date Opened: **08/26/2020**
Date of Last Activity: ■
Scheduled Payment Amount: ■
Actual Payment Amount: **$0**
Date of Last Payment: **12/22/2024**
Term Duration: **39 Months**

Date of 1st Delinquency: **01/19/2024**
Date Major Delinquency 1st Reported: ■
Amount Past Due: ■
Charge Off Amount: **$333**
Date Closed: **12/22/2024**
Activity Designator: **Paid and Closed**

Terms Frequency: **Monthly**
Months Reviewed: **52**
Deferred Payment Start Date: ■
Balloon Payment Amount: ■
Balloon Payment Date: ■
Narrative Code(s): **067, 098, 108, 158**

**Payment History**

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024 | 60 | 90 | CO | CO | CO | CO | CO | CO | CO | CO | ■ | ■ |
| 2023 | ✓ | ✓ | 30 | ✓ | 30 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | 30 |
| 2022 | ■ | ✓ | ✓ | ✓ | ✓ | ✓ | 30 | 60 | 30 | 60 | ✓ | ✓ |

| Narrative Code | Narrative Code Description |
|---|---|
| 067 | Charged Off Account |
| 098 | Account Paid For Less Than Full Balance |
| 108 | Consumer Disputes This Account |
| 158 | Closed or Paid Account/Zero Balance |

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
John Lonie

**DEFENDANTS**
General Motors Financial Company, Inc.

(b) County of Residence of First Listed Plaintiff: Kings County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
1731 Coleman Street
Brooklyn NY 11234

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☒ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
15 U.S.C § 1681

Brief description of cause:
Violation of the Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b)

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 9/1/2026

SIGNATURE OF ATTORNEY OF RECORD: John Lonie

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

John Lonie

*Plaintiff(s)*

v.

General Motors Financial Company, Inc.

*Defendant(s)*

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* General Motors Financial Company, Inc.
C/o Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-4234 USA

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

John Lonie
1731 Coleman Street
Brooklyn, New York 11234

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

## Pro Se Registration and Consent for Electronic Service of Orders and Notices Issued by the Court in Civil Cases

Please register me to receive service of documents and notices of electronic filings to my e-mail address via the Court's electronic filing system (ECF). By registering for electronic service, I affirm that:

- JL I understand that I **waive** my right to receive service of court issued documents by first class mail and that I will no longer receive paper copies of court issued documents such as notices, decisions, opinions, memoranda & orders, orders, judgments and appeal instructions.
  Initial here JL
- JL I understand that I will be sent notices of electronic filing via e-mail and upon receipt of a notice, I will be permitted one "free look" at the document by clicking on the hyperlinked document number, at which time I should print or save the document to avoid future charges. **The one 'free look' will expire in 15 days from the date the notice was sent.** After the "free look" is used or expired, the document can be accessed by me through PACER (Public Access to Court Electronic Records) and I may be charged to view the document.
  Initial here JL
- JL I understand that it is strongly recommended that I establish a PACER account by visiting the PACER website at www.pacer.gov, which account will allow me to view, print, and download documents at any time for a nominal fee.
  Initial here JL
- JL The email address I provided below is valid and I understand I am responsible for checking it on a regular basis. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address.
  Initial here JL
- JL I understand that electronic service does **not** allow me to file documents electronically and does **not** mean that I can serve documents by e-mail to the opposing party. I must continue to file all communications regarding my case in paper copy with the Court and serve the opposing party.
  Initial here JL
- JL I understand that I must file a consent in each case in which I wish to receive electronic service and that electronic service is not available in Social Security or Immigration cases or for incarcerated litigants.
  Initial here JL

Date: 9/1/2026 Signature: John Lonie

Case No: ______ Print Full Name: John Lonie

Telephone No.: (917) 439-6391 Email Address: Johnmlonie123@yahoo.com

Home Address: 1731 Coleman Street Brooklyn, NY 11234

Return form to: U.S.D.C., E.D.N.Y. - Pro Se Dept.
225 Cadman Plaza East or 100 Federal Plaza
Brooklyn, NY 11201 Central Islip, NY 11722

8/2013

Extremely Urgent

Express

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 10 2026 ★
BROOKLYN OFFICE

USDC EDNY - PRO SE DEPT
225 CADMAN PLZ E
BROOKLYN NY 11201

P: BOTBWN: 2MR I: 239

239-4594

1ZA6V4270371869309

SAT08485 XLE_AS01-3 Sep 10 07:24:16 2026
US 11120 UDC 25.9 SATOLR

1 LBS 1 OF 1

DWT: 14,12,2

E DEPT

11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
SEP 10 2026
BROOKLYN OFFICE

NY 111 9-50

UPS GROUND
TRACKING #: 1Z A6V 427 03 7186 9309

BILLING: P/P

WS 29.0.705 Zebra ZP 450 37.0A 09/2026

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.

For information about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com

RRD R 1024